UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JUAN CARLOS AGUILAR, JOSE ANTONIO
ZAVALA and JOSE CARLOS ZAVALA,

               Plaintiffs,                         REPORT AND
                                                RECOMMENDATION
        - against -                       20 CV 5527 (DG)(RML)

PAGE X CORP. d/b/a/ LA GROTTA
RISTORANTE and JUAN FERNANDEZ,

               Defendants.
------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated May 12, 2023, the Honorable Diane Gujarati, United States

District Judge, referred plaintiffs' motion for default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that plaintiffs' motion

for default judgment be granted.

### BACKGROUND AND FACTS

        Plaintiffs Juan Carlos Aguilar, Jose Antonio Zavala, and Jose Carlos Zavala

("plaintiffs") filed this case on November 13, 2020, against defendants Page X Corp. d/b/a/ La

Grotta Ristorante ("Page X" or the "corporate defendant") and Juan Fernandez (the "individual

defendant," and together with the corporate defendant "defendants") asserting claims under the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 301, *et seq.*, and the New York Labor Law

("NYLL") §§ 190, *et seq*.  (See Complaint, dated Nov. 13, 2020 ("Compl."), Dkt. No. 1.)

Plaintiff Juan Carlos Aguilar was employed by defendants from approximately January 2007

until approximately June 2018.  (Id. ¶ 8.)  His primary responsibilities included food preparation,

cleaning, and other miscellaneous duties.  (Id. ¶ 22.)  Plaintiff Jose Antonio Zavala was

employed by defendants from approximately October 2001 until approximately September 2019.

(Id. ¶ 9.)  His primary responsibilities included dishwashing, cleaning, and other miscellaneous duties.  (Id. ¶ 28.)  Plaintiff Jose Carlos Zavala was employed by defendants from approximately 2010 until approximately March 2020.  (Id. ¶ 10.)  His primary responsibilities included food preparation, cleaning, and other miscellaneous duties.  (Id. ¶ 35.)

The corporate defendant is a corporation with its principal place of business in Little Neck, New York.  (Id. ¶¶ 11, 12.)  Plaintiffs allege that the corporate defendant is an enterprise engaged in interstate commerce or in the production of goods for commerce, and handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce, and has an annual gross volume of sales greater than $500,000.  (Id. ¶ 19.)  The individual defendant owns and operates Page X and has power over personnel and payroll decisions; the authority to hire and fire employees; and the authority to establish and pay employees' wages, set work schedules, and maintain employment records.  (Id. ¶¶ 13-17.)

Both defendants were properly served with the summons and the complaint.  (See Affidavits of Service of Steve Kemp, sworn to Dec. 11, 2020, Dkt. No. 9.)  Defendants filed their Answer on April 26, 2021.  (See Answer, dated Apr. 16, 2021, Dkt. No. 10.)  However, defendants' Answer was stricken after the case stalled for over a year.  (See Report and Recommendation, dated Mar. 13, 2023, Dkt. No. 32; see also Order Adopting in Part Report and Recommendation, dated Apr. 18, 2023.)  As a result of defendants' Answer being stricken, Judge Gujarati directed the Clerk of Court to enter default against both defendants.  (Order Adopting in Part Report and Recommendation, dated Apr. 18, 2023.)  On April 19, 2023, the Clerk of the Court noted the defaults of both defendants.  (See Clerk's Entry of Default, dated Apr. 19, 2023, Dkt. No. 34.)  On May 11, 2023, plaintiffs moved for default judgment.  (See Motion for Default

Judgment, dated May 11, 2023, Dkt. No. 37.)  Judge Gujarati referred plaintiffs' motion to me on May 12, 2023.  (See Order, dated May 12, 2023.)

Plaintiffs seek default judgment on claims under the FLSA and NYLL for defendants' failure to (1) pay overtime compensation, (2) pay minimum wages; (3) pay spread of hours compensation; and (4) provide proper wage notices and wage statements.  (See Plaintiffs' Memorandum of Law, dated May 11, 2023 ("Pls.' Mem."), Dkt. No. 29, at 23-24.)  Plaintiffs request an award of unpaid wages, liquidated damages, statutory damages, post-judgment interest, and attorney's fees and costs.  (Id.; see also Compl. ¶ 42.)

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for plaintiffs to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here.  FED. R. CIV. P. 55(a).  Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment.  FED. R. CIV. P. 55(b)(2).  To grant a default judgment, the court must ensure that plaintiffs took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit.  Here, as explained above, plaintiffs have demonstrated that they properly served defendants with the summons and complaint.  Plaintiffs have also demonstrated that they served the Motion for Default Judgment and accompanying submissions on defendants in compliance with Local Rule 55.2(c).  (See Affirmation of Service of Avraham Y. Scher, Esq., dated May 11, 2023, Dkt. No. 40.)

**A. Liability**

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law." Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted). A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where plaintiffs move for default judgment, the court "is required to accept all of [the plaintiffs'] factual allegations as true and draw all reasonable inferences in [the plaintiffs'] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court must also "determine whether [plaintiffs'] allegations establish [defendants'] liability as a matter of law." Id.

Plaintiffs have sufficiently pleaded factual allegations that give rise to liability for unpaid minimum and overtime wages under the FLSA and NYLL, spread of hours pay under the NYLL, and wage statement and notice violations under the NYLL. (See Compl. ¶¶ 21-42.) The extent to which plaintiffs can recover damages for these violations initially depends on whether: (1) their claims are timely; (2) they are covered employees under the FLSA and the NYLL; and (3) defendants were their employers under the FLSA and NYLL.

1. Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior. 29 U.S.C. § 255(a). Here, the complaint, which was filed on November 13, 2020, alleges willful violations of the FLSA. (See Compl. ¶¶ 60, 61, 71, 72.) Therefore, the FLSA's three-year

4

statute of limitations applies.  Plaintiffs have timely claims under the FLSA for the period of November 2017 through November 2020.  Regardless of willfulness, plaintiffs' claims must arise within six years prior to the filing of the complaint to be timely under the NYLL.  See N.Y. LAB. L. §§ 198(3), 663(3).  Thus, plaintiffs' claims arising between November 2014 and November 2020 are timely under the NYLL.

       2.  <u>Employee Coverage</u>

Since the provisions of the FLSA and NYLL apply only to employees of covered employers, plaintiffs in wage and hour actions must show that they were defendants' employees and that defendants were employers subject to the coverage of each statute.  For purposes of the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work."  29 U.S.C. §§ 203(e)(1); (g).  Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work for a covered employer.  An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[1]  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  Id. § 203(a).

"Employers are subject to [the] FLSA when their employees are either engaged in commerce or in the production of goods for commerce ('individual coverage') or employed in an enterprise engaged in commerce or in the production of goods for commerce ('enterprise coverage')."  Reyes v. Tacos El Gallo Giro Corp., No. 20 CV 3474, 2022 WL 940504, at *3

---

[1] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

(E.D.N.Y. Jan. 25, 2022), <u>report and recommendation adopted</u>, 2022 WL 939769 (E.D.N.Y.

Mar. 29, 2022) (citing 29 U.S.C. §§ 206(a), 207(a)(1)) (quotation marks and citations omitted)).

"[T]o properly allege individual or enterprise coverage, [plaintiffs] need not do much.  Aside

from stating the nature of [their] work and the nature of [their employer's] business, plaintiffs

must provide only straightforward allegations connecting that work to interstate commerce."  <u>Id.</u>

(citations and quotation marks omitted).

Plaintiffs have adequately pleaded that they were employees to whom no statutory

exemptions apply, insofar as they allege that they worked for defendants and that their primary

duties included food preparation, dishwashing, cleaning, and other miscellaneous tasks.  (<u>See</u>

Compl. ¶¶ 21, 22, 27, 28, 34, 35.)   Accordingly, I find that plaintiffs have established that they

are covered employees under the FLSA and NYLL.

3.   <u>Employer Status of the Corporate Defendant and the Individual Defendant</u>

To establish the corporate defendant's liability under the FLSA and NYLL,

plaintiffs must allege that it was an "enterprise engaged in commerce or in the production of

goods for commerce" within the applicable statutory definition.  29 U.S.C. § 203(s)(1).  As

discussed above, plaintiffs allege that the corporate defendant had a gross annual volume of

sales of not less than $500,000 during the relevant period and was engaged in interstate

commerce.  (Compl. ¶ 19.)  Accordingly, plaintiffs have established the liability of the corporate

defendant under the FLSA and NYLL.

To hold the individual defendant liable under the FLSA and NYLL, plaintiffs

must allege that the individual defendant was their "employer" within the broad meaning of 29

U.S.C. § 203(d).  <u>See</u> <u>Fermin</u>, 93 F. Supp. 3d at 35-37.  The Second Circuit has set forth a series

of non-exclusive factors for evaluating the "economic reality" of a given relationship to

determine whether an employment relationship exists.  See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984).  These factors include whether the alleged employer: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.  Id.; see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  Here, plaintiffs allege that the individual defendant owns and operates the corporate defendant and had the authority to hire and fire employees, set their pay rates, issue their pay, set their schedules, and maintain employee records.  (Compl. ¶¶ 13-18.)  Thus, plaintiffs have alleged that the individual defendant exercised sufficient control over plaintiffs to find that he was plaintiffs' employer.  Accordingly, plaintiffs have established the liability of the corporate defendant and the individual defendant under the FLSA and NYLL.

### B.  Damages

Once the court determines that a defaulting defendant is liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "The burden is on the plaintiff to establish [his or her] entitlement to recovery."  Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).  Plaintiffs request $1,167,819.63 for unpaid minimum and overtime wages, spread of hours compensation, liquidated damages, and wage notice and statement violations.  (See Pls.' Mem. at 23-24.)  I will address each category of damages in turn for each plaintiff.

1.  <u>Unpaid Wages</u>

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'"  <u>Gunawan</u>, 897 F. Supp. 2d at 88 (quoting <u>Zeng Liu v. Jen Chu Fashion Corp.</u>, No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); <u>see also</u> <u>Kim v. Kum Gang, Inc.</u>, No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted).  Here, because defendants have defaulted and no employment records have been produced, the court will presume the accuracy of plaintiffs' recollections and estimates of hours worked.

a.  <u>*Minimum Wage*</u>

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work.  29 U.S.C. § 206; N.Y. Lab. L. § 652.  At all times relevant to this action, the FLSA required defendants to pay plaintiffs a minimum hourly wage of $7.25.  29 U.S.C. § 206(a)(1).  However, New York law obligated defendants to pay plaintiffs a minimum hourly wage of $8.00 from December 31, 2013 to December 30, 2014; $8.75 from December 31, 2014 to December 30, 2015; $9.00 from December 31, 2015 to December 30, 2016; $11.00 from December 31, 2016 to December 30, 2017; $13.00 from December 31, 2017 to December 30, 2018; and $15.00 from December 31, 2018 to the end of

plaintiffs' period of employment.[2]  N.Y. LAB. L. § 652(1)(a)(i).  Because New York's minimum wage is higher than the federal minimum wage, plaintiffs may recover those amounts.  29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.  To determine whether defendants paid plaintiffs at least minimum wage, it is first necessary to determine their regular hourly rates of pay.  Under both federal and New York law, when an employee is paid a flat rate, irrespective of the number of hours actually worked, that employee's regular rate is computed by "totaling all the sums received at such [] rates . . . in the workweek and dividing by the total hours actually worked."  29 C.F.R. § 778.112; see also N.Y.C.R.R. tit. 12, § 142-2.2.

Plaintiff Juan Carlos Aguilar worked approximately seventy-nine and a half hours per week during his employment with defendants and was paid approximately $350 per week from November 2014 through December 2015 and approximately $500 per week from January 2016 through June 2018.  (Compl. ¶¶ 23, 24.)  Plaintiff Jose Antonio Zavala worked approximately eighty-nine hours per week from November 2014 through September 2019 and was paid approximately $450 per week during that period.  (Id. ¶¶ 29, 30.)  Finally, plaintiff Jose Carlos Zavala worked approximately seventy-two hours per week and was paid approximately $300 per week from January 2014 through December 2017 and approximately $450 per week from January 2018 through March 2020.  (Id. ¶¶ 36, 37.)  Plaintiffs' regular hourly rates of pay are as follows:

---

[2] Beginning December 31, 2016, annual increases in the general minimum wage were determined by employment location, industry, and number of employees.  See https://perma.cc/BK86-4M93.  The minimum wage rates listed here are for "large employers."  A "large employer" is defined as an "employer of eleven or more employees."  N.Y. LAB. L. § 652(1)(a)(i).  Plaintiffs allege that defendants employed approximately twenty to forty employees at all times relevant to this action.  (See Compl. ¶ 46.)  Therefore, defendants are a large employer under the NYLL.

| Regular Hourly Rate of Pay Calculation – Plaintiff Juan Carlos Aguilar | | | | |
|---|---|---|---|---|
| Pay Period | | Weekly Pay | Hours Worked per Week | Regular Hourly Rate of Pay |
| From | To | | | |
| 11/1/2014 | 12/31/2015 | $350 | 79.5 | $4.40 |
| 1/1/2016 | 6/30/2018 | $500 | 79.5 | $6.30 |

| Regular Hourly Rate of Pay Calculation – Plaintiff Jose Antonio Zavala | | | | |
|---|---|---|---|---|
| Pay Period | | Weekly Pay | Hours Worked per Week | Regular Hourly Rate of Pay |
| From | To | | | |
| 11/1/2014 | 9/30/2019 | $450 | 89 | $5.06 |

| Regular Hourly Rate of Pay Calculation – Plaintiff Jose Carlos Zavala | | | | |
|---|---|---|---|---|
| Pay Period | | Credited Pay | Hours Worked per Week | Regular Hourly Rate of Pay |
| From | To | | | |
| 1/1/2014 | 12/31/2017 | $300 | 72 | $4.17 |
| 1/1/2018 | 3/31/2020 | $450 | 72 | $6.25 |

Defendants did not pay plaintiffs a regular hourly rate of pay that was greater than the wage required by New York law, and plaintiffs are owed damages for minimum wage violations as calculated in the below charts. Accordingly, I respectfully recommend that plaintiff Juan Carlos Aguilar be awarded **$32,560.00**, plaintiff Jose Antonio Zavala be awarded **$61,188.00**, and plaintiff Jose Carlos Zavala be awarded **$78,535.60** for minimum wage violations, in line with the below calculations.[3]

---

[3] Plaintiffs were not paid at the required minimum wage across all hours worked. Nevertheless, the minimum wage damages account only for plaintiffs' first forty hours worked; the remaining hours that plaintiffs worked over forty are compensated within the overtime wage calculations in the next section.

| Minimum Wage Calculations – Plaintiff Juan Carlos Aguilar | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pay Period | | Weeks | Hours | Regular Rate of Pay | Minimum Wage Rate | Hourly Minimum Wages Owed | Minimum Wages Owed |
| From | To | | | | | | |
| 11/1/2014 | 12/31/2014 | 8 | 40 | $4.40 | $8.00 | $3.60 | $1,152.00 |
| 1/1/2015 | 12/31/2015 | 52 | 40 | $4.40 | $8.75 | $4.35 | $9,048.00 |
| 1/1/2016 | 12/31/2016 | 52 | 40 | $6.30 | $9.00 | $2.70 | $5,616.00 |
| 1/1/2017 | 12/31/2017 | 52 | 40 | $6.30 | $11.00 | $4.70 | $9,776.00 |
| 1/1/2018 | 6/30/2018 | 26 | 40 | $6.30 | $13.00 | $6.70 | $6,968.00 |
| Total Minimum Wages Owed | | | | | | | $32,560.00 |

| Minimum Wage Calculations – Plaintiff Jose Antonio Zavala | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pay Period | | Weeks | Hours | Regular Rate of Pay | Minimum Wage Rate | Hourly Minimum Wages Owed | Minimum Wages Owed |
| From | To | | | | | | |
| 1/1/2014 | 12/31/2014 | 8 | 40 | $5.06 | $8.00 | $2.94 | $940.80 |
| 1/1/2015 | 12/31/2015 | 52 | 40 | $5.06 | $8.75 | $3.69 | $7,675.20 |
| 1/1/2016 | 12/31/2016 | 52 | 40 | $5.06 | $9.00 | $3.94 | $8,195.20 |
| 1/1/2017 | 12/31/2017 | 52 | 40 | $5.06 | $11.00 | $5.94 | $12,355.20 |
| 1/1/2018 | 12/31/2018 | 52 | 40 | $5.06 | $13.00 | $7.94 | $16,515.20 |
| 1/1/2019 | 9/30/2019 | 39 | 40 | $5.06 | $15.00 | $9.94 | $15,506.40 |
| Total Minimum Wages Owed | | | | | | | $61,188.00 |

| Minimum Wage Calculations – Plaintiff Jose Carlos Zavala | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pay Period | | Weeks | Hours | Regular Rate of Pay | Minimum Wage Rate | Hourly Minimum Wages Owed | Minimum Wages Owed |
| From | To | | | | | | |
| 1/1/2014 | 12/31/2014 | 52 | 40 | $4.17 | $8.00 | $3.83 | $7,966.40 |
| 1/1/2015 | 12/31/2015 | 52 | 40 | $4.17 | $8.75 | $4.58 | $9,526.40 |
| 1/1/2016 | 12/31/2016 | 52 | 40 | $4.17 | $9.00 | $4.83 | $10,046.40 |
| 1/1/2017 | 12/31/2017 | 52 | 40 | $4.17 | $11.00 | $6.83 | $14,206.40 |
| 1/1/2018 | 12/31/2018 | 52 | 40 | $6.25 | $13.00 | $6.75 | $14,040.00 |
| 1/1/2019 | 12/31/2019 | 52 | 40 | $6.25 | $15.00 | $8.75 | $18,200.00 |
| 1/1/2020 | 3/31/2020 | 13 | 40 | $6.25 | $15.00 | $8.75 | $4,550.00 |
| Total Minimum Wages Owed | | | | | | | $78,535.60 |

b. *Overtime Compensation*

Plaintiffs allege that defendants willfully violated the FLSA by failing to pay

them overtime wages.  (See Compl. ¶¶ 60, 61, 71, 72.)  Plaintiffs are entitled to compensation

under the FLSA and NYLL at the rate of one and one-half times their regular rate of pay for the

11

hours they worked in excess of forty during a workweek.  See 29 U.S.C. § 207(a)(1); N.Y.C.R.R. tit. 12, § 142-2.2.  "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he [or she] is employed.'"  Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)).  The method for calculating overtime is the same under both statutes, but a plaintiff may not receive double damages.  See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).

To calculate the overtime compensation plaintiffs are owed, the number of hours they worked over forty each week is multiplied by 150 percent of the higher of (i) their regular rate of pay, or (ii) the applicable minimum wage.  See Long Lin v. New Fresca Tortillas, Inc., No. 18 CV 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019).  As discussed above, plaintiff Juan Carlos Aguilar worked approximately seventy-nine and a half hours per week during his employment with defendants and was never paid overtime compensation.  (Compl. ¶¶ 23-25.)  Plaintiff Jose Antonio Zavala worked approximately eighty-nine hours per week during his employment with defendants and was never paid overtime compensation.  (Id. ¶¶ 29, 30, 32.)  Lastly, plaintiff Jose Carlos Zavala worked approximately seventy-two hours per week and was never paid overtime compensation.  (Id. ¶¶ 36-38.)

Because plaintiffs have already been paid for these hours, their overtime wage deficiencies are "calculated by multiplying the difference between the paid rate and the overtime wage rate by the total number of overtime hours worked."  Sanchez v. Ms. Wine Shop Inc., No. 22 CV 2178, 2022 WL 17368867, at *12 (E.D.N.Y. Nov. 30, 2022) (citations omitted).  Alternatively, plaintiffs' actual compensation for overtime hours worked can be subtracted from

the overtime wages that should have been paid to plaintiffs based on their applicable overtime

rates to achieve the same result, as demonstrated below.  Based on the calculations in the below

tables, I respectfully recommend that plaintiff Juan Carlos Aguilar be awarded **$69,629.02**,

plaintiff Jose Antonio Zavala be awarded **$144,058.04**, and plaintiff Jose Carlos Zavala be

awarded **$119,828.80** in unpaid overtime wages.

| Overtime Wage Calculations – Plaintiff Juan Carlos Aguilar | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Pay Period | | Weeks | OT Hours | Rate of Pay | Actual Compensation for OT Hours | Minimum Wage Rate | Applicable Overtime Rate | Overtime Wages Owed Minus Wages Paid |
| From | To | | | | | | | |
| 11/1/2014 | 12/31/2014 | 8 | 39.5 | $4.40 | $1,390.40 | $8.00 | $12.00 | $3,792 - $1,390.40 = $2,401.60 |
| 1/1/2015 | 12/31/2015 | 52 | 39.5 | $4.40 | $9,037.60 | $8.75 | $13.13 | $26,969.02 - $9,037.60 = $17,931.42 |
| 1/1/2016 | 12/31/2016 | 52 | 39.5 | $6.30 | $12,940.20 | $9.00 | $13.50 | $27,729 - $12,940.20 = $14,788.80 |
| 1/1/2017 | 12/31/2017 | 52 | 39.5 | $6.30 | $12,940.20 | $11.00 | $16.50 | $33,891 - $12,940.20 = $20,950.80 |
| 1/1/2018 | 6/30/2018 | 26 | 39.5 | $6.30 | $6,470.10 | $13.00 | $19.50 | $20,026.50 - $6,470.10 = $13,556.40 |
| Total OT Wages Owed | | | | | | | | **$69,629.02** |

| Overtime Wage Calculations – Plaintiff Jose Antonio Zavala | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Pay Period | | Weeks | OT Hours | Rate of Pay | Actual Compensation for OT Hours | Minimum Wage Rate | Applicable Overtime Rate | Overtime Wages Owed Minus Wages Paid |
| From | To | | | | | | | |
| 1/1/2014 | 12/31/2014 | 8 | 49 | $5.06 | $1,983.52 | $8.00 | $12.00 | $4,704 - $1,983.52 = $2,720.48 |
| 1/1/2015 | 12/31/2015 | 52 | 49 | $5.06 | $12,892.88 | $8.75 | $13.13 | $33,455.24 - $12,892.88 = $20,562.36 |
| 1/1/2016 | 12/31/2016 | 52 | 49 | $5.06 | $12,892.88 | $9.00 | $13.50 | $34,398 - $12,892.88 = $21,505.12 |
| 1/1/2017 | 12/31/2017 | 52 | 49 | $5.06 | $12,892.88 | $11.00 | $16.50 | $42,042 - $12,892.88 = $29,149.12 |
| 1/1/2018 | 12/31/2018 | 52 | 49 | $5.06 | $12,892.88 | $13.00 | $19.50 | $49,686 - $12,892.88 = $36,793.12 |
| 1/1/2019 | 9/30/2019 | 39 | 49 | $5.06 | $9,669.66 | $15.00 | $22.50 | $42,997.50 - $9,669.66 = $33,327.84 |
| Total OT Wages Owed | | | | | | | | **$144,058.04** |

| Overtime Wage Calculations – Plaintiff Jose Carlos Zavala | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Pay Period | | Weeks | OT Hours | Rate of Pay | Actual Compensation for OT Hours | Minimum Wage Rate | Applicable Overtime Rate | Overtime Wages Owed Minus Wages Paid |
| From | To | | | | | | | |

| 1/1/2014 | 12/31/2014 | 52 | 32 | $4.17 | $6,938.88 | $8.00 | $12.00 | $19,968 - $6,938.88 = $13,029.12 |
|----------|------------|----|----|-------|-----------|-------|--------|-----------------------------------|
| 1/1/2015 | 12/31/2015 | 52 | 32 | $4.17 | $6,938.88 | $8.75 | $13.13 | $21,848.32 - $6,938.88 = $14,909.44 |
| 1/1/2016 | 12/31/2016 | 52 | 32 | $4.17 | $6,938.88 | $9.00 | $13.50 | $22,464 - $6,938.88 = $15,525.12 |
| 1/1/2017 | 12/31/2017 | 52 | 32 | $4.17 | $6,938.88 | $11.00 | $16.50 | $27,456 - $6,938.88 = $20,517.12 |
| 1/1/2018 | 12/31/2018 | 52 | 32 | $6.25 | $10,400 | $13.00 | $19.50 | $32,448 - $10,400 = $22,048 |
| 1/1/2019 | 12/31/2019 | 52 | 32 | $6.25 | $10,400 | $15.00 | $22.50 | $37,440 - $10,400 = $27,040 |
| 1/1/2020 | 3/31/2020 | 13 | 32 | $6.25 | $2,600 | $15.00 | $22.50 | $9,360 - $2,600 = $6,760 |
| **Total OT Wages Owed** | | | | | | | | **$119,828.80** |

2. <u>Spread of Hours Wages</u>

Plaintiffs also seek spread of hours pay under the NYLL.  (Compl. ¶¶ 82, 83; Pls.'
Mem. at 19.)  "The spread of hours is the length of the interval between the beginning and end of
an employee's workday."  N.Y.C.R.R. tit. 12, § 146-1.6(a).  "On each day on which the spread
of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum
hourly rate."  <u>Id.</u>

Plaintiff Juan Carlos Aguilar alleges that he worked approximately sixteen hours
per day, three days a week, from November 2014 through June 2018.  (Compl. ¶ 26.)  Plaintiff
Jose Antonio Zavala alleges that he worked approximately sixteen hours per day, five days a
week, from November 2014 through September 2019.  (<u>Id.</u> ¶ 33.)  Lastly, plaintiff Jose Carlos
Zavala alleges that he worked approximately sixteen hours a day for two days a week from
November 2014 through March 2020.  (<u>Id.</u> ¶ 40.)  Nonetheless, plaintiffs allege that defendants
never compensated them with "spread of hours" pay for days that exceeded ten hours.  (<u>Id.</u> ¶¶ 26,
33, 40.)  For each day plaintiffs worked a shift of more than ten hours, plaintiffs are entitled to an
additional hour of pay at the minimum wage rate.  Therefore, I respectfully recommend that
plaintiff Juan Carlos Aguilar be awarded **$5,691**, plaintiff Jose Antonio Zavala be awarded
**$14,100**, and plaintiff Jose Carlos Zavala be awarded **$7,124** in spread of hours damages,

consistent with the calculations below.

| Spread of Hours Calculations – Plaintiff Juan Carlos Aguilar | | | | | |
|---|---|---|---|---|---|
| Pay Period | | No. of Weeks | SOH Days per Week | Minimum Wage | SOH Owed |
| From | To | | | | |
| 11/1/2014 | 12/31/2014 | 8 | 3 | $8.00 | $192 |
| 1/1/2015 | 12/31/2015 | 52 | 3 | $8.75 | $1,365 |
| 1/1/2016 | 12/31/2016 | 52 | 3 | $9.00 | $1,404 |
| 1/1/2017 | 12/31/2017 | 52 | 3 | $11.00 | $1,716 |
| 1/1/2018 | 6/30/2018 | 26 | 3 | $13.00 | $1,014 |
| Total | | | | | $5,691 |

| Spread of Hours Calculations – Plaintiff Jose Antonio Zavala | | | | | |
|---|---|---|---|---|---|
| Pay Period | | No. of Weeks | SOH Days per Week | Minimum Wage | SOH Owed |
| From | To | | | | |
| 1/1/2014 | 12/31/2014 | 8 | 5 | $8.00 | $320 |
| 1/1/2015 | 12/31/2015 | 52 | 5 | $8.75 | $2,275 |
| 1/1/2016 | 12/31/2016 | 52 | 5 | $9.00 | $2,340 |
| 1/1/2017 | 12/31/2017 | 52 | 5 | $11.00 | $2,860 |
| 1/1/2018 | 12/31/2018 | 52 | 5 | $13.00 | $3,380 |
| 1/1/2019 | 9/30/2019 | 39 | 5 | $15.00 | $2,925 |
| Total | | | | | $14,100 |

| Spread of Hours Calculations – Plaintiff Jose Carlos Zavala | | | | | |
|---|---|---|---|---|---|
| Pay Period | | No. of Weeks | SOH Days per Week | Minimum Wage | SOH Owed |
| From | To | | | | |
| 1/1/2014 | 12/31/2014 | 52 | 2 | $8.00 | $832 |
| 1/1/2015 | 12/31/2015 | 52 | 2 | $8.75 | $910 |
| 1/1/2016 | 12/31/2016 | 52 | 2 | $9.00 | $936 |
| 1/1/2017 | 12/31/2017 | 52 | 2 | $11.00 | $1,144 |
| 1/1/2018 | 12/31/2018 | 52 | 2 | $13.00 | $1,352 |
| 1/1/2019 | 12/31/2019 | 52 | 2 | $15.00 | $1,560 |
| 1/1/2020 | 3/31/2020 | 13 | 2 | $15.00 | $390 |
| Total | | | | | $7,124 |

3.   Liquidated Damages

Plaintiffs additionally request liquidated damages.  (See Pls.' Mem. at 13); see also Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages under both the FLSA and NYLL for the same period).  Plaintiffs may recover liquidated damages in the amount of 100 percent of unpaid wages "unless the

15

employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lᴀʙ. L. §§ 198(1-a), 663; see also Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). The NYLL also authorizes liquidated damages for spread of hours claims. See, e.g., Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016).

Defendants have not answered or otherwise appeared in this action and thus cannot demonstrate a "good faith" basis for believing the underpayment of wages was lawful. Accordingly, I recommend that plaintiff Juan Carlos Aguilar be awarded **$107,880.02**, plaintiff Jose Antonio Zavala be awarded **$219,346.04**, and plaintiff Jose Carlos Zavala be awarded **$205,488.40** in liquidated damages, consistent with the calculations below.

| Liquidated Damages Calculations (Unpaid Wages Totals + Spread of Hours Totals) | | | |
|---|---|---|---|
| Plaintiff | Liq. Damages on Unpaid Wages | Liq. Damages on Spread of Hours | Total Liq. Damages |
| Juan Carlos Aguilar | $102,189.02 | $5,691 | **$107,880.02** |
| Jose Antonio Zavala | $205,246.04 | $14,100 | **$219,346.04** |
| Jose Carlos Zavala | $198,364.40 | $7,124 | **$205,488.40** |

### 4. Wage Notices & Wage Statements

Plaintiffs each seek $10,000 total in statutory damages for defendants' failure to provide wage notices or wage statements as required by NYLL §§ 195(1) and 195(3). (Compl. ¶¶ 86, 89; Pls.' Mem. at 22-23.) New York's Wage Theft Prevention Act ("WTPA") § 195(1) requires employers to give their employees written notice containing the "employee's rate of pay, allowances, and various other information relating to the computation of plaintiff's pay" at the time of hiring. Deng v. Frequency Elecs., Inc., No. 21 CV 6081, 2022 WL 16923999, at *8 (E.D.N.Y. Nov. 14, 2022). NYLL § 195(3) requires employers "to provide, for each pay period, a statement ('wage statement') showing how that pay was computed including deductions." Id.

16

Plaintiffs assert that they never received wage notices or statements from defendants.  (Compl. ¶¶ 41, 85, 88; Pls.' Mem. at 22.)

The Supreme Court held in TransUnion LLC v. Ramirez that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation.  See 141 S. Ct. 2190 (2021). Consequently, some courts in this Circuit have "found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing."  Beh v. Cmty. Care Companions Inc., No. 19 CV 1417, 2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022); see also Deng, 2022 WL 16923999, at *9 (finding that plaintiff lacked standing because the "complaint contains no allegations that she was somehow injured merely because of the failure to provide the required notice and statements."); You Qing Wang v. XBB, Inc., No. 18 CV 7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim."); Francisco v. NY Tex Care, No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (". . . based on the record before the Court, it is not clear that [failure to provide wage notices and statements] led to an 'injury' that can be recognized by a federal court.").  These cases rely primarily on the Second Circuit's reasoning in Maddox v. Bank of New York Mellon Tr. Co., N.A., where the court found that the plaintiffs had failed to allege a concrete harm arising out of the defendant's failure to timely present a certificate of discharge to the county clerk, a purely technical violation.  19 F.4th 58, 64-66 (2d Cir. 2021).

Nevertheless, other courts in this Circuit have continued to grant statutory damages for wage statement and notice violations.  See, e.g., Black v. 7714 Ent., Corp., No. 21

CV 4829, 2022 WL 3643969, at *2 (E.D.N.Y. Aug. 24, 2022); Brito v. Marina's Bakery Corp., No. 19 CV 828, 2022 WL 875099, at *20 (E.D.N.Y. Mar. 24, 2022); Santos v. Cancun and Cancun Corp., No. 21 CV 192, 2022 WL 1003812, at *7-8 (E.D.N.Y. Feb. 17, 2022); Lamar v. A&O Brothers Corp., No. 21 CV 169, 2022 WL 1422439, at *9 (E.D.N.Y. Feb. 2, 2022); Williams v. Miracle Mile Props. 2 LLC, No. 20 CV 3127, 2022 WL 1003854, at *10 (E.D.N.Y. Feb. 1, 2022).[4]

One such court recently found that a plaintiff bringing claims under the WTPA for wage statement and notice violations is not required to show "the downstream impact on the plaintiff of the non-provision of the required notice." Bueno v. Buzinover, No. 22 CV 2216, 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) (adopting in part the Report and Recommendation but reversing the Report's finding that there was no Article III standing with respect to the wage statement and notice violations). In so finding, the court in Bueno emphasized that the concrete harm necessary for Article III standing is captured in the legislative purpose of the WTPA, which provides not only an avenue for employees to recover wages owed them by their employer but also a means to empower them—namely, through the provision of written notices with respect to employers' legal obligations—to advocate for themselves. Bueno, 2023 WL 2387113, at *3.

It is critical to note that the factual circumstances arising out of cases like TransUnion and Maddox versus those arising in cases under the WTPA are fundamentally distinct. In TransUnion, the entire class of plaintiffs had alleged that TransUnion had violated its obligations under the Fair Credit Reporting Act ("FCRA") by maintaining credit files for those

---

[4] It bears noting that the Supreme Court's recent decision in 303 Creative v. Elenis appears to lower the bar for plaintiffs to establish Article III standing. 143 U.S. 2298, 2308 (2023) (contradicting TransUnion's "actual and concrete injury" standard and announcing a new, looser "credible threat" requirement).

plaintiffs that contained misleading Office of Foreign Assets Control ("OFAC") alerts. TransUnion, 141 S. Ct. at 2208-09.  However, only 1,853 of the class members had actually suffered the reputational harm of having those misleading OFAC alerts disseminated to third-party businesses, i.e., the harm FCRA sought to prevent via the disputed provisions.  Id.  As such, those 1,853 class members were deemed to have standing, whereas the remaining class members—whose misleading credit files had not been disseminated—were deemed not to have standing for failure to allege either actual or imminent harm.  Id. at 2209.  Similarly, in Maddox, the plaintiffs alleged violations of New York's mortgage-satisfaction-recording statutes and had rooted their standing to sue in "impaired access to accurate financial information," "a false impression adverse to their credit status," and "the right to be free of these harms [as] recognized by the state legislature."  Maddox, 19 F.4th at 61, 64-66.  However, the Second Circuit found that the plaintiffs lacked standing because they had failed to plead sufficient facts to show that any of the risks of harm—namely, risk of (1) having "an actionable cloud on title to the property securing the discharged mortgage debt," (2) reputational harm; and (3) difficulty obtaining financing if they so wished—alleged by the plaintiffs, had or would likely come to fruition.  Id. at 64-66.

The wage statement and notice violations alleged here are of a different class of harm from those alleged in TransUnion and Maddox.  The WTPA was enacted to "protect an employee's concrete interest in being paid what he or she is owed under the NYLL."  Bueno, 2023 WL 2387113, at *3 (quoting Imbarrato v. Banta Mgmt. Servs., Inc., No. 18 CV 5422, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)).  Specifically, the WTPA's wage notice and wage statement provisions are intended to serve as safeguards of employees' broader interest in being paid the wages they earned.  Bueno, 2023 WL 2387113, at *3.  Indeed, if an employer's failure

to provide wage statements or wage notices were considered a purely technical violation, then no employee would ever have standing to sue under the WTPA and the statutory damages provisions would be rendered meaningless and unenforceable.

Here, plaintiffs allege that they have never received a single paystub, wage notice, wage statement, or any other such written documentation from defendants during the course of their employment with defendants.  (Pls.' Mem. at 22.)  As demonstrated by the damages owed to plaintiffs, plaintiffs were not paid the wages they earned.  I find that plaintiffs have Article III standing to raise these statutory violations.  The penalty for failing to provide a wage notice is $50 per day, up to $5000.  N.Y. LAB. L. § 198(1-b).  The penalty for failing to provide wage statements is $250 per day, up to $5000.  Id. § 198 (1-d).  Plaintiffs each worked for defendants for more than 100 days.  (Pls.' Mem. at 22.)  Thus, I respectfully recommend that each plaintiff be awarded $10,000 on these claims.  N.Y. LAB. L. §§ 198(1-b), (1-d).

5.  Post-judgment Interest

Finally, plaintiffs request post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  28 U.S.C. § 1961(a).  Moreover, post-judgment interest under Section 1961 is mandatory.  See Fermin, 93 F. Supp 3d at 53.  Therefore, I respectfully recommend that plaintiffs be awarded post-judgment interest under 28 U.S.C. § 1961.

### C. Attorney's Fees and Costs

As the prevailing party, plaintiffs are entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL.  See 29 U.S.C. § 216(b), N.Y. LAB. L. §§ 198, 663(1).  As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam).  Although plaintiffs include a request for attorney's fees and costs in the complaint, plaintiffs have not requested attorney's fees and costs in the submissions accompanying the motion for default judgment or provided any attorney time records for this action.  Therefore, I cannot recommend an award of attorney's fees and costs.  Instead, I recommend granting plaintiffs leave to file a request for attorney's fees and costs accompanied by accurate, detailed, and contemporaneous time records.

### CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiffs' motion be granted and that default judgments be entered against defendants.  Regarding damages, I respectfully recommend that: (1) plaintiff Juan Carlos Aguilar be awarded **$225,760.04** in total, representing **$32,560.00** in unpaid minimum wages, **$69,629.02** in unpaid overtime wages, **$5,691** in spread of hours damages, **$107,880.02** in liquidated damages, and **$10,000** for wage statement and notice violations; (2) plaintiff Jose Antonio Zavala be awarded **$448,692.08** in total, representing **$61,188.00** in unpaid minimum wages, **$144,058.04** in unpaid overtime wages, **$14,100** in spread of hours damages, **$219,346.04** in liquidated damages, and **$10,000** for wage statement and notice violations; and (3) plaintiff Jose Carlos Zavala be awarded **$420,976.80** in total, representing **$78,535.60** for minimum wage violations, **$119,828.80** in unpaid overtime wages, **$7,124** in spread of hours damages, **$205,488.40** in liquidated damages,

and **$10,000** for wage statement and notice violations.  I further recommend that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a).  Finally, I recommend that plaintiffs be permitted leave to file a request for attorney's fees and costs that is accompanied by supporting time records.

Plaintiffs are directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten (10) days of this Report and Recommendation.  Any objection to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days.  Failure to file objections within the specified time period waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); see also FED. R. CIV. P. 72(b), 6(a), 6(d).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       August  28, 2023